IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG ALAN HAIRSTON, FC-9835,<br>    Petitioner, | )<br>)<br>) |
| v. | ) 2:12-cv-359<br>) |
| L. FOLINA, et al.,<br>    Respondents. | )<br>)<br>) |

Report and Recommendation

I.  Recommendation:

It is respectfully recommended that the petition of Craig Alan Hairston for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II.  Report:

Craig Alan Hairston, an inmate at the State Correctional Institution – Greene has presented a petition for a writ of habeas corpus. Hairston is presently serving a life plus a five to ten year sentence imposed following his conviction, by a jury of second degree murder and conspiracy at Nos. CC 2159 of 2000 and 5330 of 2000 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on September 19, 2002.[1]

An appeal was taken to the Superior Court in which the issues presented were:

1. Whether the felony murder doctrine, as embodied in Pennsylvania Suggested Standard Jury Instruction (Crim) §15.2502B, violates due process under the United States and Pennsylvania Constitutions by creating a mandatory presumption directing a factfinder to find malice upon a finding that an accused intends to commit one of an enumerated list of felonies?

2. Whether double jeopardy under the Fifth Amendment to the United States Constitution and Article I. §10 of the Pennsylvania Constitution bars imposition of consecutive sentences for felony murder and an underlying felony?[2]

---

[1] See: Petition at ¶¶ 1-6. The Common Pleas docket sheet reflects that the petitioner was also convicted of robbery, abuse of a corpse and arson. See: Exhibit 2 to the answer.
[2] See: Answer at Exhibit 5 to the answer at p.2.

1

On November 4, 2005, the Superior Court affirmed the conviction and sentence.[3] On June 27, 2006, leave to appeal was denied by the Pennsylvania Supreme Court.[4]

A timely post-conviction petition was filed and relief was denied on June 30, 2009.[5] An appeal was filed in the Superior Court in which the issues presented were:

1. Did the trial court err in denying appellant's PCRA petition since trial counsel was ineffective for failing to object [to] the trial court's jury instruction since the felony murder doctrine violated due process under the U.S. and PA Constitutions by creating a mandatory presumption directing a factfinder to find malice upon a finding that an accused intends to commit one of an enumerated list of felonies?

2. Did the trial court err in denying appellant's PCRA petition since co-defendant William Paxton submitted an affidavit stating that he was fully responsible for the instant crimes and that appellant is completely innocent and testified to same at the PCRA hearing (N.T. 5/28/09, at 65-74, 87-89)?

3. Did the trial court err in denying appellant's PCRA petition since trial counsel was ineffective for failing to call James Lockwood (who is now deceased) to testify at trial, since he would have testified, according [to] his 9/12/02 affidavit, that appellant was forced at gunpoint to participate in the instant crimes?

4. Did the trial court err in denying appellant's PCRA petition since trial counsel was ineffective for failing to object to the prejudicial comments made by homicide detective Logan at trial; said statements improperly referred to appellant's post arrest silence.[6]

On November 4, 2005, the denial of post-conviction relief was affirmed.[7] Leave to appeal was denied by the Pennsylvania Supreme Court on November 30, 2011.[8]

In the instant petition executed on March 16, 2012 Hairston contends he is entitled to relief on the following grounds:

1. Petitioner's counsel was ineffective at trial in failing to object to the trial court's jury instruction; hence trial court erred in denying PCRA since felony murder doctrine violated due process under the U.S. and PA Constitution.

---

[3] Id. at Exhibit 6.
[4] Id. at Exhibit 7.
[5] Id. at Exhibit 11.
[6] Id. at Exhibit 12 pp.3-4.
[7] Id. at Exhibit 13
[8] Id. at Exhibit 14.

2. Newly discover evidence: William Paxton who undisputedly committed said murders wrote an affidavit absolving petitioner from all crimes…[9]

3. Violation of due process and right to counsel: trial counsel failed to call witness [Lockwood] to the crime whose testimony according to his affidavit would have absolved petitioner from crime.[10]

4. Denied right to fair trial as guaranteed by Fifth Amendment due to ineffective counsel: failing to object to prejudicial comments made by detective Logan while on the stand in presence of jury.[11]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental

---

[9] In his memorandum Hairston discusses this issue as number three.
[10] In his memorandum Hairston discusses this issue as number two.
[11] See: Petition and petitioner's memorandum of law.

3

miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010).

Because it appears that the issues which the petitioner seeks to raise here have been raised in the courts of the Commonwealth in the first instance, they are properly before this Court for consideration.[12]

---

[12] The Commonwealth concedes this point in its answer at p.17.

4

The background to this prosecution is fully set forth in the November 4, 2005 Memorandum of the Superior Court quoting the trial court's summarization:

> During the early evening hours of January 3, 2000 the [Appellant] met William Paxton at J.R.'s Bar on Pittsburgh's North Side. Paxton was paged by his former college roommate, Jeremy Lindsey, and was informed that he and Joe Clayton were driving down from Edinboro University in Erie, Pennsylvania.[Appellant] gave Paxton a box of .22 caliber bullets and went to a local gas station where he filled a gas can with gasoline. The [Appellant] then went to an alley known as McBrier Way on the North Side and waited for Paxton and the two victims to arrive.
>
> The two victims were shot in the head by Paxton with a gun using .22 caliber ammunition. The [Appellant] came out from where he was hiding with the gasoline. After the [Appellant] and Paxton rifled the dead bodies for money and personal property they poured gas over the bodies. The [Appellant] and Paxton then moved the bodies into the victim's car and drove to East Lacock Street, and set them on fire. A witness, Ann Imes, who works near the scene, noticed the fire and called 911. Pittsburgh firefighters and police who arrived at the scene … discovered the bodies in the burning car. The patrol officers then called in City of Pittsburgh Homicide detectives who arrived and processed the scene. City Homicide Detective Nutter testified that the bodies were so badly burned they could not be immediately identified. However, by using the vehicle's license plate, they traced Mr. Lindsey's automblie [sic] at Edinboro University. Through the University it was discovered that Mr. Lindsey had been a roommate of Mr. Paxton, who resided in Pittsburgh.
>
> As part of the investigation, City Homicide Detective Brian Weismantle interviewed Mr. Paxton. Mr. Paxton made a statement and took the detective to McBrier Way, where the detective found .22 caliber shell casings and a tennis shoe. It was later determined that the shoe belonged to one of the victims in the car. Furthermore, Detective Weismantle got [Appellant's] name through Mr. Paxton. Detective James McGee was sent to interview the [Appellant]. The Detective arrived at the [Appellant's] place of employment and requested [Appellant to] accompany him to the City Homicide Office. There the [Appellant] first offered that Paxton was with him on the night of January 3, 2000. However, he later recanted this statement and gave a taped confession to Detective Logan.[13]

The first issue which the petitioner raises here is that trial counsel was ineffective for failing to challenge the jury instructions on the issue of "malice" and whether the instruction violated due process under the United States and Pennsylvania Constitutions. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective

---

[13] See: Exhibit 6 to the answer at pp.1-2.

5

assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

In reviewing this issue the Superior Court noted that petitioner "maintains that the Pennsylvania felony-murder instruction … is constitutionally infirm because it directs a conclusive presumption of malice from a finding of intent to commit one of several enumerated felonies rather than a permissive inference."[14] Hairston contends here that in failing to challenge this instruction counsel was ineffective.[15]

Under Pennsylvania law, 18 Pa.C.S.A. §2502(b) "a criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony [i.e. robbery, rape, deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping]." In this regard, the court instructed the jury:

> The more serious types of crimes in our Crimes Code are called felonies. For example, robbery is a felony. Second-degree murder is often called felony murder because it is a killing connected with a felony. When two people are partners in a successful or unsuccessful attempt to commit a felony and one of them kills a third person, both partners may be guilty of felony murder. Neither partner has to intend to kill nor anticipate that anyone be killed…

---

[14] Id. at p.3.
[15] We note that in his direct appeal, the challenge to the Pennsylvania felony-murder instruction was deemed waived with leave to raise this issue in a post-conviction petition. See: Exhibit 6 at pp. 3-4.

6

> You may find the defendant guilty of second-degree murder, that is felony murder, if you are satisfied that the following four elements have been proven beyond a reasonable doubt:
>
> First, that William Paxton killed Jeremy Lindsey and Joseph Clayton.
>
> Second, that William Paxton did so while he and the defendant were partners in committing or attempting to commit a certain robbery.
>
> Thirdly, that William Paxton did the act, that is, that he killed Jeremy Lindsey and Joseph Clayton, in furtherance of the robbery.
>
> And fourthly, that the defendant was acting with malice. *You can presume or infer that the defendant was acting with malice if you are satisfied beyond a reasonable doubt that he and William Paxton were partners in the commission or the attempted commission of the robbery. Because robbery is a crime inherently dangerous to human life, there does not have to be any other proof of malice* (TT.865-867, emphasis added).[16]

It is this inference of malice upon which the petitioner raises his claim of ineffective assistance of counsel here.

While the petitioner relies on <u>Sandstom v. Montana</u>, 442 U.S. 510 (1979), <u>Francis v. Franklin</u>, 471 U.S. 307 (1985) and <u>Yates v. Evatt</u>, 500 U.S. 391 (1991) for the holding that mandatory presumptions in criminal cases are prohibited, the Pennsylvania Superior Court in <u>Com. v. Rawls</u>, 477 A.2d 54 543 (1984), rejected this claim as applied to second degree murder and concluded:

> In Pennsylvania, the malice "presumed" under the felony-murder law is nothing more than the malice which accompanies perpetration of the underlying felony… The Commonwealth is *not* relieved of the burden to prove that the defendant engaged in the underlying felony with the requisite mens rea. Since each crime enumerated in the felony-murder statute is a crime of specific intent, the Commonwealth must prove such intent. Once such intent is shown the felony-murder doctrine merely imputes the malice incident to the intentional felony over to the killing, which, moreover must be accomplished *in furtherance of* the intentional felony (emphasis in original).

Thus, the holding is merely that the element of malice need not be proven twice, but rather it carries over from the underlying felony to the second degree murder count. At the post-

---

[16] Under Pennsylvania law, malice is an essential element of second degree murder, however, malice may be imputed from the intent to commit the underlying felony. <u>Com. v. Lambert</u>, 795 A.2d 1010 (Pa.Super.), leave to appeal denied 805 A,2d 521 (Pa.2002).

7

conviction hearing trial counsel testified that the court presented the standard jury instructions and he was unaware of any constitutional infirmity in those instructions (PCRA 5/28/09 pp. 31-32).

Because, under Pennsylvania law there is no reason to prove the same element twice, counsel cannot be deemed ineffective for failing to raise a meritless claim. Real v. Shannon, 600 F.3d 302 (3d Cir.2010).

The second issue which petitioner urges as a basis for relief is that his post-conviction petition should have been granted as a result of his co-defendant's affidavit exonerating him.

In his affidavit executed on May 30, 2008, over six years after the petitioner's trial, Paxton stated that he forced the petitioner at gun point to accompany him on the robberies and murders.[17] At the post-conviction hearing Paxton testified that he acted alone; that the petitioner arrived *after* the shootings; that he forced the petitioner to help him further; that at his own trial he testified and denied killing anyone and that all his appeals had been exhausted (PCRA 5/28/09 at pp. 65-88). After hearing his testimony, the post-conviction court found "Mr. Paxton's testimony at the evidentiary hearing and averments of his affidavit attempting to exonerate petitioner to be wholly incredible and this claim is without merit."[18] As a factual finding this conclusion is presumed correct and there is nothing presented here which would dispel it. 28 U.S.C.§2254(e)(1); Roland v. Vaughn, 445 F.3d 671 (3d Cir.2006). Accordingly, this claim does not provide a basis for relief.

The petitioner's third claim is that trial counsel was ineffective for failing to call James Lockwood as a defense witness. Lockwood who is now deceased submitted an after trial affidavit dated September 12, 2002 representing that he was present in the alley where the incident occurred; that a tall man shot the victims; that a smaller male then entered the alley and the bigger male "held the smaller male at gunpoint … This larger male then proceeded to forcefully usher the second male into the rear passenger side of the car. From this point, the male with the gun, then entered the driver's side of the car and drove up the alley."[19] The implication being that petitioner was the shorter male.

At the post-conviction hearing, two of petitioner's brothers testified that they were at the trial and informed defense counsel of Lockwood's availability and the nature of what he would

---

[17] See: PCRA Exhibit 2 appended to the amended petition which appears as Exhibit 9 to the answer.
[18] See: Exhibit 11 to the answer at p.5.
[19] See: Exhibit 3 appended to the amended petition which appears as Exhibit 9 to the answer.

testify about. (PCRA 5/28/09 pp.50, 52, 62). At that same hearing, trial counsel testified that he was never informed of Lockwood's availability and only received Lockwood's affidavit after the trial had concluded (PCRA 5/28/09 pp.20, 29, 38, 39). The court in rejecting this issue discounted petitioner's brothers' testimony as "incredible" and concluded that counsel's testimony was credible.[20] Again, this conclusion is presumed correct and there is nothing presented here which would dispel it. 28 U.S.C.§2254(e)(1); Roland v. Vaughn, 445 F.3d 671 (3d Cir.2006). Additionally, when reviewing this allegation, the Superior Court further observed that petitioner "has not shown how Lockwood's testimony would have been beneficial to his case where evidence presented at trial indicated that Hairston had admitted his role in the robbery and murders to the police. See N.T., 7/16/02, at 273-81)."[21] For this reason counsel cannot be deemed ineffective and accordingly this claim does not provide a basis for relief.

Hairston's final claim is that counsel was ineffective for failing to object to Detective Logan's trial testimony referring to his post-arrest silence. During his cross-examination, Logan was asked about his interrogation technique contrasted to that of counsel to which he responded, "I think the difference is I'm looking for the truth and you're looking for something to get him off on … my job, contrary to your belief, is to find the truth… (TT. 7/15-16/02 at pp.304-305). As a result of not objecting to this testimony, petitioner now contends that counsel was ineffective. In reviewing this claim, the Superior Court observed that "Detective Logan made these statements in response to questioning by Hairston's counsel that he had emphasized Hairston's statements of guilt and omitted statements of innocence… Because the statements were not improper, counsel had no basis to raise an objection."[22]

Detective Logan's testimony was in response to an inquiry regarding his interview techniques and counsel compared the detective' inquiry to defense counsel's questioning of witnesses. The response merely indicated that the objectives of these inquiries were different, and were proper responses to the question. For this reason counsel cannot be deemed ineffective for failing to object.

Accordingly, the petitioner has failed to demonstrate that his conviction and sentence were secured in a manner that was contrary to clearly established federal law or involved an unreasonable application of clearly established federal law as required by 28

---

[20] See: Exhibit 11 to the answer at p.5.
[21] See: Exhibit 13 to the answer at pp.10-11.
[22] Id. at pp.11-12.

9

U.S.C. §2254(d)(1) and he is not entitled to relief here. For this reason it is recommended that the petition of Craig Alan Hairston for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal.

Respectfully submitted,<br>
s/ Robert C. Mitchell<br>
United States Magistrate Judge

Filed: July 16, 2012